**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ALEXANDER C. ROMANZI,**

    **Plaintiff,**

**-vs-**                   **Case No. 6:10-cv-484-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

    **Defendant.**
_____

**MEMORANDUM OPINION AND ORDER**

This cause came on for consideration – for a second time – without oral argument[1] on review of the Commissioner's administrative decision to deny Plaintiff's application for a period of disability and Disability Insurance Benefits under the Social Security Act. For the reasons set forth herein, the decision is **REVERSED** and the matter is **REMANDED** to the Commissioner for further proceedings.

**Procedural Background[2]**

Plaintiff protectively filed an application for Disability Insurance Benefits (DIB) on September 28, 2004,[3] alleging disability as of August 1, 2002 (R. 110, 371, 387).[4] Plaintiff's application was

---

[1] Although Plaintiff requested oral argument, the Court finds error is apparent on the face of the record, and argument is therefore unnecessary.

[2] Much of the procedural background and summary of Plaintiff's impairments is adopted from the Court's prior Memorandum Opinion and Order in Plaintiff's previous case, Case No. 6:07-cv-1848-Orl-DAB.

[3] Although there are conflicting references in the administrative record to the date of the protective filing (*see* R. 16 (referencing 9/24), and 110 (referencing 9/28)), the Court accepts the agency record at R. 110. The error is not determinative, given the other issues raised by Plaintiff.

[4] The onset date was later amended to August 1, 2002 at a hearing held on February 6, 2007 (R. 387). Plaintiff's date last insured was December 31, 2006 (R. 60).

denied at the initial and reconsideration levels and Plaintiff requested and received a hearing before Administrative Law Judge Robert Marcinkowski (the "ALJ"). On March 7, 2007, the ALJ issued an unfavorable decision (R. 13-29A) ("the First Decision"), which was eventually appealed and ultimately reversed and remanded by this Court in *Romanzi v. Commissioner of Social Security*, Case No. 6:07-cv-1848-Orl-DAB (M. D. Fla. Jan. 5, 2009). R. 423. Following remand and the Appeals Council vacating the ALJ's decision (R. 436-38), the ALJ held a second hearing on June 24, 2009 (R. 565-86). On October 23, 2009, the ALJ issued a second unfavorable decision (R. 404-22) ("the Second Decision"). Plaintiff filed a timely Request for Review, which was denied (R. 400-02), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed an appeal in this Court on March 31, 2010 (Doc. 1). The matter is now briefed and ready for resolution.

## Nature of Claimed Disability

Plaintiff alleged disability due to mental illness, a shoulder injury, obesity, and pain in his back, legs, ankle and neck (R. 73, 371-81).

*Summary of Evidence Before the ALJ*

Plaintiff was 45 years old at the time his insured status expired (R. 569), with a high school education and past relevant work experience as a police officer and fountain server/clerk (R. 27, 76-78, 370).

The medical evidence relating to the pertinent time period (alleged onset through date last insured) is well presented in the ALJ's detailed opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. By way of summary, medical records from Plaintiff's treating physicians and mental health practitioners covering the pertinent time period indicate that Plaintiff was diagnosed with and treated for moderate to severe

left tarsal tunnel syndrome (R. 172-174, 201), low back pain, lumbar disc degeneration without myelopathy, lumbar radiculitis, lumbrosacral myofascial pain syndrome, foot pain (*see* R. 288), Bipolar Disorder, Attention Deficit Disorder and Anxiety Disorder NOS (R. 320). Treatment records also make frequent reference to Plaintiff's weight which, at the time of the first hearing, was 315 pounds (R. 368).

In addition to treating records, the administrative record includes opinions from Plaintiff's treating psychiatrist, Jeffrey Krotenberg, D.O., and his psychologist, Rebecca Deal, PhD. Dr. Krotenberg opined that Plaintiff was not capable of sustaining work activity for eight hours a day, five days a week because he was unable to handle job stresses and unable to concentrate (R. 204). Dr. Krotenberg also found that Plaintiff had marked restrictions of activities of daily living, frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere, and repeated (three or more) episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation or signs and symptoms which may include deterioration of adaptive behaviors (R. 260). Dr. Deal completed a Psychiatric Review Technique (R. 331-339) in which she noted that Plaintiff had difficulty with work or work-like behaviors due to interference from mood disruption and anxiety. Dr. Deal opined that Plaintiff had marked restrictions of activities of daily living and marked difficulties in maintaining social functioning, and that he had frequent deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere (R. 338).

Additional relevant records submitted after the First Decision, but prior to the Second Decision include Dr. Krotenberg's treatment records dated from April 2007 to February 2009, and a PRTF dated June 18, 2009 reflecting that Plaintiff's bipolar disorder and depressive syndrome resulted in

marked limitations in activities of daily living and social functioning, and constant deficiencies in concentration, persistence or pace. (R. 556-63). Plaintiff also continued to see Dr. Deal for counseling through July 2007.

In addition to treating records and opinions, the record contains evidence from an examining consulting physician (R. 157-164) and consulting state agency psychologist (R. 179-181), as well as non-examining physicians and psychologists (R. 165-71A, 182-95, 215-22, 223-40, 253-69, 331-39). Plaintiff was evaluated by a Vocational Consultant who reviewed the medical records and opined that Plaintiff "was not suited mentally" for certain work and could not identify any occupation within Plaintiff's exertional and non-exertional limitations, as reported in the medical records he reviewed (R. 142-144).

At both hearings, Plaintiff testified as to his condition and limitations, and the record includes several reports from Plaintiff as well as others regarding his functional abilities and daily activities. A Vocational Expert (VE) also appeared and testified at both hearings.

In the Second Decision dated October 23, 2009, the ALJ determined that Plaintiff had the severe impairments of an affective disorder; a back disorder, left ankle disorder, and obesity, but nonetheless had the residual functional capacity (RFC) to perform a restricted range of sedentary work (R. 409, 416). The ALJ found Plaintiff was not disabled within the meaning of the Social Security Act (R. 422).

## Standard Of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §

404.1520(f). Plaintiff asserts that the ALJ erred in failing to determine whether Plaintiff's impairments met or equaled the Listings with respect to mental illness.

## Issues and Analysis

Plaintiff asserts that the ALJ's decision was not made in accordance with proper legal standards in that: 1) the ALJ did not properly assess the opinion of Plaintiff's treating psychiatrist, Dr. Krotenberg; 2) the ALJ did not apply the correct legal standard in assessing Plaintiff's restrictions in concentration, persistence, and pace; and 3) the ALJ posed an incomplete hypothetical. Because the Court finds that the ALJ's decision was not based on substantial evidence, the decision is **REVERSED** and the matter is **REMANDED** to the Commissioner for further proceedings.

1. *Treating physician opinion*

Plaintiff argues that the ALJ's reasons for rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Krotenberg, who opined on a June 2005 state agency questionnaire that Plaintiff is unable to handle job stresses and unable to concentrate, are not based on substantial evidence. The Commissioner contends that substantial evidence supports the ALJ's decision to give little weight to the opinion of Dr. Krotenberg.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding

an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

This Court previously determined that the ALJ's rationale for discrediting the treating physicians' opinions discussed in the ALJ's First Decision was not supported by substantial evidence. The Court found that if the opinions of the treating psychiatrist and psychologist had been given controlling weight, they would have been dispositive on the issue of Plaintiff's ability to work because both providers found Plaintiff to be incapable of the stress of work, and both VE's opined that such mental limitations precluded work (R. 428-29 (citing 21-22, 392-94, 142-44)). Instead, the ALJ gave "great weight" to the most recent non-examining state agency physician who "ha[d] the advantage of objectivity in making his assessment." (R. 427 (citing R. 22)). Based on a review of the record as a whole, the Court determined that a portion of the rationale provided for discrediting the treating

physician was not supported by substantial evidence, and reversed and remanded the ALJ's First Decision.

In this second appeal, Plaintiff raises nearly the same issue that was cause for remand before – the ALJ's discounting of the opinion of Dr. Krotenberg, who treated Plaintiff from January 2005 through the date of Plaintiff's second hearing. R. 203-14, 253-61, 320-30, 344-47, 495-15, 556-63. Plaintiff contends that the ALJ did not properly assess the opinion of Plaintiff's treating psychiatrist, Dr. Krotenberg.

Dr. Krotenberg opined on June 30, 2005 that Plaintiff's mood and affect were depressed, his concentration and short term memory were both decreased, and his diagnosis was bipolar disorder with a guarded prognosis. (R. 203-04). Dr. Krotenberg also opined that Plaintiff was unable to sustain work activities for eight hours a day, five days a week because he was unable to handle job stressors and unable to concentrate (R. 203-04). In addressing Dr. Krotenberg's opinion, the ALJ stated in the Second Decision:

> The claimant has complained of a mental impairment which also affects his ability to work. . . . The claimant has been under treatment for his psychiatric conditions with Dr. Jeffrey Krotenberg. In his treatment notes, Dr. Krotenberg begins assessing a GAF of 50 in what appears to be January 2005. . . . By March 16, 2006, the notes show the claimant reported normal sleep, appetite, and motivation. No feelings of hopelessness or problems with concentration or memory were reported. By that time, however, a GAF of 60 was assessed. The claimant continued to progress, with a normal mental state reported in April. He was having no problems with sleep, appetite, energy, or mood. Motivation and interest were normal and no social withdrawal or concentration or memory problems noted. Few problems were reported on the mental status review but for some increased irritability and problems with concentration and memory. Additionally, the clamant's estimated GAF increased to 69 by October 12, 2006, then end of the treatment notes.

> Interestingly, Dr. Krotenberg gave a mental health report to the state agency consultants in June 2005, which showed that although the claimant had a depressed mood and affect, his thought processes, thought content, and behavior was normal. He did opine that the claimant's concentration was decreased as was his short term memory. Despite this relatively benign report, Dr. Krotenberg offered that the

> claimant was capable of his activities of daily living but would be unable to handle job stressors or concentrate for work. In February 2006, Dr. Krotenberg completed a psychiatric review form and opined that the claimant had "marked" limitations in regards to restrictions of activities of daily living and "frequent" limitations in deficiencies of concentration, persistence, or pace. Dr. Krotenberg assessed that the claimant was moderately limited in regards to maintaining social functioning and had "repeated" episodes of decompensation.
>
> The undersigned accords little weight to this opinion of Dr. Krotenberg as the doctor's own notes reveal that the claimant was responding to treatment, with an increasing GAF. It must also be considered that when Dr. Krotenberg gave his assessment in February 2006, not even one year had passed since he had begun treatment with the claimant, and thus he could not have taken into account the positive response which the later records reveal. Even at the time of the assessment in February 2006, the treatment note of February 8 and the subsequent reports of psychiatric visits do not substantiate such a pessimistic opinion of the claimant's functionality and do not provide any evidence of repeated episodes of decompensation. It is noted further that Dr. Krotenberg merely checked boxes in a form and did not provide any references to specific objective evidence or provide any rationale in support of his opinion. Thus, the undersigned cannot accord more than little weight to this pessimistic opinion.

R. 412-13.

In contrast, the ALJ accorded "great weight" to the assessment of non-examining clinical psychologist, Dr. Hertz, who opined that Plaintiff displayed symptoms of bipolar disorder with moderate limitations in activities of daily living, social functioning, and in maintaining concentration persistence, or pace, and no evidence of any episodes of decompensation (R. 413). The ALJ gave his reasoning for giving the non-examining psychologist's opinion more weight:

> Dr. Hertz had the opportunity to review the mental health report of Dr. Krotenberg and weigh it in relation to the report of Dr. Michael Harrell and the reports from both the claimant and a third party, thus making his analysis more persuasive. Thus, the undersigned accords great weight to the assessment of Dr. Hertz. He had the advantage of reviewing more evidence than Dr. Carter and based his objective opinion upon an analysis of a more complete medical record. As a state agency consultant, Dr. Hertz not only has expertise in the assessment of mental functionality as it pertains to the disability provisions of the Social Security Act and Regulations, but he has the advantage of objectivity when making his assessment.
>
> The evaluation of mental impairments must be done with the longitudinal record in mind as an individual's level of functioning may vary considerably over time. Proper

> evaluation of a mental impairment must take into account any variation in functioning in arriving at a determination of severity. The undersigned has considered that the claimant had not begun any formal treatment for a mental impairment until June 2005, when he began treatment with Dr. Krotenberg. In Dr. Krotenberg's treatment notes, the claimant appeared to respond to his medications, with his GAF scores increasing from 50 to 69 by October 2006 (Ex. 23F and 25F).

R. 413-14. Plaintiff argues that to the extent the ALJ's reasons for discounting Dr. Krotenberg's opinion may be attributed to his June 2005 form, they are not supported by substantial evidence.

Plaintiff argues Dr. Krotenberg's opinion was properly based on what the regulations define as "psychiatric signs" – abnormalities of behavior, mood, thought, memory, orientation, development, or perception. 20 C.F.R. § 404.1528(b). Plaintiff contends that Dr. Krotenberg did not merely "check boxes on a form," but rather wrote handwritten responses, setting forth reasons for his opinions (R. 203-04). Plaintiff also argues Dr. Krotenberg's opinion is consistent with other evidence in the record of Plaintiff's deficits in concentration, persistence, and pace, and the ALJ erred in discounting it. Plaintiff contends that Dr. Krotenberg's progress notes repeatedly document Plaintiff's decreased concentration and memory (R. 206, 207, 208, 209, 321, 322, 328, 329, 330). Plaintiff points specifically to notes from January 2005, the beginning of treatment, and October 2006, just prior to the expiration of his insured status, when Dr. Krotenberg consistently reported that Plaintiff presented with decreased concentration and memory (R. 321, 330).

The Commissioner argues Dr. Krotenberg's opinion was inconsistent with the other medical evidence of record, such as the assessments of the state agency psychologists, Dr. Carter and Dr. Hertz, because they opined that Plaintiff's mental condition was mild (R. 194) and that, although Plaintiff had some deficits with irritability and concentration, he would be able to perform a job that was less stressful than his previous job as a police officer (R. 239). The Commissioner contends that "at the very least, Dr. Hertz's opinion was supported by the medical evidence, consistent with the record a whole, and undermines Dr. Krotenberg's opinion." Doc. 22 at 9. Dr. Hertz, like Dr.

Krotenberg, also opined that Plaintiff displayed symptoms of bipolar disorder with limitations in maintaining concentration, persistence, and pace; he opined Plaintiff's limitations were moderate which is consistent with Dr. Krotenberg's opinion that concentration and short term memory were "decreased" (R. 203).

The Commissioner argues that the ALJ properly noted the clinical records from Dr. Krotenberg do not support his opinion, citing Plaintiff's improved GAF scores of 50 increasing to 60, and 69 over the course of the year, along with "the lack of any evidence of episodes of decompensation or attention problems" (R. 320-30). The ALJ described Plaintiff's increasing GAF scores from March to October 2006 as Plaintiff's "positive response" to treatment (R. 419). Plaintiff argues that in Dr. Krotenberg's progress notes, he describes Plaintiff's depression symptoms more as "waxing and waning" with bipolar disorder, making it apparent that any improvement was not sustained over time. If the ALJ is going to rely in part on GAF scores, he cannot rely only on the improving scores and ignore the declining scores in order to characterize these scores as a "positive response" to treatment.

As Plaintiff points out, the ALJ cited only those records indicating that Plaintiff's GAF scores ranged from 60[5] to 69[6] between March and October 2006, an eight month period, but the ALJ failed to consider the whole picture. Plaintiff's GAF scores were 50[7] in September 2005, 51 in October 2005, 50 in February 2006, improved between March and October 2006, but were declining again to 59 in November 2006, and 55 in January and March 2007, immediately following his date last insured

---

[5] A GAF score of 60 indicates moderate symptoms or moderate impairment in social, occupational, or school functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000, Text Rev.) ("DSM-IV-TR").

[6] A GAF score of between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and had some meaningful interpersonal relationships. DSM-IV-TR.

[7] A GAF score of 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. DSM-IV-TR.

of December 31, 2006. (R. 206, 208, 328, 344, 345, 347). The ALJ erred in not considering *all* of Plaintiff's GAF scores and other record evidence of Plaintiff's impairments in concentration and memory (R. 206-09, 321, 322, 328-30), thus, he erred in discounting Dr. Krotenberg's opinion and the Second Decision was not based on substantial evidence.

2. *Concentration, persistence and pace*

Plaintiff argues that the ALJ erred in the mental RFC finding by limiting Plaintiff to simple, routine tasks with occasional interaction with others because that finding does not fully encompass the concentration limitations. The ALJ determined that Plaintiff had moderate limitations in concentration, persistence or pace and moderate limitations in social functioning (R. 415). However, in assessing Plaintiff's mental RFC, the ALJ merely limited Plaintiff to performing "simple routine tasks" and "occasional interaction with others," and did not include any concentration limitations (R. 416). Dr. Hertz, whose opinion the ALJ accorded "great weight," imposed specific limitations regarding concentration that were not addressed or explained by the ALJ (R. 413-414). Dr. Hertz also opined that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors (R. 237-38). The ALJ failed to include any of these limitations or otherwise account for them in Plaintiff's RFC.

The Commissioner argues that the ALJ's ultimate RFC finding — that Plaintiff could perform "simple, routine tasks and have occasional interaction with others" — accounts for all of the mental limitations proposed by Dr. Hertz in section III of the Mental RFC form – functional capacity assessment. Dr. Hertz opined "[Activities of Daily Living] indicate that claimant has difficulty with *irritability* and *concentration.* While claimant does have some deficits, it appears that claimant would

be able to perform a job in less stressful environment than he has had in the past (as a police officer). Therefore claim rated as *moderate* at this time." R. 239 (emphasis added).  Even if the Court were to look only at the functional capacity assessment section, Dr. Hertz opined that Plaintiff would have moderate limitations with concentration.  R. 237-39.  The ALJ's RFC limiting Plaintiff to "simple, routine tasks" does not adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace.

### 3. *Hypothetical question*

Plaintiff argues that the hypothetical question the ALJ posed to the VE did not comprehensively describe Plaintiff's limitations as supported by the record.  The Commissioner argues the hypothetical accurately reflected the limitations supported by the record.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Pendley*, 767 F.2d at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).  The Commissioner argues that the ALJ did incorporate Dr. Hertz's opinion in the hypothetical question and the ratings made using the psychiatric review technique form do not have to be included in the RFC used in assessing mental impairments.

The Eleventh Circuit has rejected a similar position of the Commission in *Richter v. Commissioner of Social Security*, 379 Fed. Appx. 959, 2010 WL 2017650 (11th Cir. May 21, 2010)[8]. In *Richter*, the court held that the ALJ could not generally account for a claimant's deficiencies in

---

[8]Unpublished opinions of the Eleventh Circuit, constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

-13-

concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks or unskilled work *unless* the "medical evidence demonstrate[s] that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence and pace" and then "these restriction sufficiently account for such deficiencies." Doc. 11-1 at 6 (citing cases for sister circuits including *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (restricting vocational expert's inquiry to simple, routine, repetitive tasks accounted for deficiencies of concentration, persistence, or pace where psychologist determined that claimant could perform such tasks without severe restrictions)). The panel also noted that sister circuits had held that hypothetical questions adequately accounted for a claimant's deficiencies in concentration, persistence, and pace where they otherwise implicitly accounted for these deficiencies, citing *White v. Commissioner of Social Security,* 572 F.3d 272, 288 (6th Cir. 2009) and *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002).

The Commissioner asserts that "based on the medical evidence of record and his PRTF assessment, the ALJ properly determined Plaintiff could perform mental work related activities that were simple, routine tasks" but the Commissioner fails to cites the specific medical evidence in support of the ALJ's conclusion, citing only Finding No. 5, which limits Plaintiff to "perform[ing] simple, routine tasks." R. 416. In the text of the ALJ's decision following Finding No. 5, the ALJ does not cite the particular medical evidence which indicates Plaintiff can perform simple, routine tasks, instead, he mentions only that he "has accorded some benefit of the doubt" to Plaintiff and assigns "moderate limitations in regards to concentration, persistence, or pace due to either the effects of his medication or his depression." R. 419. Because the ALJ chose to generally account for Plaintiff's acknowledged deficiencies in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks even though there is no medical evidence

demonstrating that Plaintiff retained the ability to engage in simple, routine tasks, the ALJ's decision was not based on substantial evidence.

To the extent Plaintiff argues that the ALJ's hypothetical was also deficient because the VE's testimony regarding the surveillance system monitor conflicts with the Dictionary of Occupational Titles' requirements that such a position requires significant interaction with others and the ability to understand and carry out more complex instructions, and the medical record shows that Plaintiff is impaired in those areas, the ALJ will also address these issues on remand.

### Conclusion

For the reasons set forth above, the administrative decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for additional proceedings not inconsistent with this opinion. The Clerk of the Court is directed to enter judgment and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record